UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| SARAH KEIM, ) | |
| ) | |
|     *Plaintiff,* ) | |
| ) | |
|     vs. ) | Case No. 1:23-cv-1156 |
| ) | |
| TIM ABNEY, Woodford County Animal ) | |
| Control Administrator, in his personal and ) | |
| official capacity, ) | |
| ) | |
| WOODFORD COUNTY, ILLINOIS, ) | |
| an Illinois municipal corporation pursuant to ) | |
| 50 ILCS 20/3(e), ) | |
| ) | |
| JOHN KRUG, Woodford County Board ) | |
| Chairman, in his official capacity, ) | |
| ) | |
| and ) | |
| ) | |
| PETERSON VET, INC., operating under the ) | |
| assumed name "Associated Veterinary ) | |
| Clinic, ) | |
| Inc., ) | |
| ) | |
|     *Defendants*. ) | **JURY DEMAND** |

# COMPLAINT

Plaintiff, SARAH KEIM ("Keim"), by her attorney, JAMES KELLY LAW FIRM, PC, and for her Complaint against Defendants, TIM ABNEY ("Abney"), WOODFORD COUNTY, ILLINOIS ("WOODFORD COUNTY"), JOHN KRUG ("Krug"), and PETERSON VET, INC. ("Associated"), respectfully states:

## INTRODUCTION

1. This suit involves the unjustified killing and beheading of a kitten ("Kiki") on March 23, 2023, by Abney, Woodford County, and Associated.

1

2. Kiki was rescued by Keim approximately six weeks prior to killing and beheading.

3. On March 23, 2023, Abney, empowered by Woodford County as its Animal Control Administrator, seized Kiki, taking her from her home at the Razor Zone Salon ("Razor Zone"), to Associated, telling Keim and others at the Razor Zone Kiki needed to be killed immediately.

4. Abney, upon taking Kiki to Associated, lied to Associated, claiming Kiki was a stray and certifying Kiki did not bite anyone in the 10 days prior to March 23, 2023, in order to have Kiki killed and beheaded.

5. At the time, Illinois statute required a 10-day observation of Kiki by a licensed veterinarian for any alleged bites.

6. Abney and Associated conspired to kill and behead Kiki in derogation of the statutory 10-day observation period.

7. Additionally, Abney had no qualifications to act as an Animal Control Administrator, nor was Abney a veterinarian.

8. Prior to Kiki's killing and beheading, it was well known to Woodford County that Abney was acting in a manner inconsistent with the law and dangerous to the public's animals.

9. Woodford County failed to vet Abney when Woodford County appointed and empowered Abney as its Animal Control Administrator and failed thereafter to train Abney regarding any aspects of the job, including 4th Amendment protections.

10. Woodford County also maintained, for years prior to Kiki's killing and beheading, an unlawful scheme in which Abney was the Animal Control Administrator, without the required veterinarian appointed as a deputy administrator, despite being on notice of the deficiencies.

11. Krug, whose role it was pursuant to statute and ordinance to appoint a licensed veterinarian as the animal control administrator or deputy administrator, failed to do so, which directly resulted in Kiki's killing and beheading.

12. Associated, despite being told by Abney that Kiki was being brought in for an alleged biting incident, killed and beheaded Kiki without a 10-day observation period, in derogation of Illinois law.

13. Now, with Kiki killed and beheaded in contravention of Illinois law, Keim has been deprived of her 4th Amendment rights, in addition to being damaged by Defendant's unlawful and tortious actions.

14. Keim has brought this civil rights suit pursuant to federal law, as Kiki's killing and beheading involves a federal question.

## THE PARTIES

15. At all relevant times, Kiki was a companion animal, which prior to Kiki's killing and beheading, lived at the Razor Zone in Eureka, Illinois.

16. At all relevant times, Keim was Kiki's owner.

17. At all relevant times, Abney was appointed and empowered by Woodford County as its Animal Control Administrator.

18. At no time was Abney ever a licensed veterinarian.

19. At all relevant times, Woodford County was a municipal corporation, located in Illinois.

20. At all relevant times, Krug was the Chairman of the Woodford County Board.

21. At all relevant times, Krug was empowered and required to appoint a veterinarian as Woodford County's Animal Control Administrator, or deputy administrator.

22. Krug, with the advice and consent of the Woodford County Board, vested Abney with the authority to act on Woodford County's behalf as Woodford County's Animal Control Administrator.

23. Abney was responsible directly to Krug for the performance of Abney's duties.

24. At all relevant times, Associated was a veterinarian practice located in Washington, Tazewell County, Illinois.

25. Associated performed the killing and beheading of Kiki.

## JURISDICTION

26. This is a civil action seeking, amongst other things, damages for Defendants committing acts under color of law depriving Keim of rights secured by the Constitution and the laws of the United States.

27. Jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983; the judicial code 28 U.S.C. § 1331 and 1343(a); the Constitution of the United States; and pendant jurisdiction as provided under U.S.C. § 1367(a).

28. An actual controversy exists between the parties, and pursuant to 28 U.S.C. § 2201, this Court has the authority to grant the relief requested.

## VENUE

29. The acts and omissions alleged herein are alleged to have happened primarily in Woodford County, Illinois.

30. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the actions giving rise to this claim, occurred in the Central District of Illinois.

## COMMON FACTS

31. At all relevant times, by statute and by Woodford County's own ordinance, Krug was required to appoint a Woodford County Animal Control Administrator.

32. On November 16, 2021, with Krug as Chairman, the Woodford County Board approved a contract with Abney, by which Abney became empowered to act as Woodford County's Animal Control Administrator.

33. Woodford County performed no diligence in vetting Abney, but solely chose Abney for the role based upon money.

34. At no time has Abney ever been a veterinarian.

35. At no time since Abney was appointed and empowered by Woodford County, has Woodford County or Abney appointed a veterinarian as a deputy administrator.

36. No veterinarian is making medical decisions for Woodford County Animal Control.

37. After appointing and empowering Abney, Woodford County provided Abney with no training regarding his duties or legal issues which foreseeably would arise in the performance of Abney's duties for Woodford County, including 4th Amendment issues.

38. After appointing and empowering Abney, Woodford County was put on notice through its State's Attorney (Woodford County's legal representative) that it was not compliant with the requirement that it appoint a veterinarian as the Animal Control Administrator or deputy administrator.

39. Despite being put on notice of the legal deficiency. Woodford County took no action to become compliant with Illinois statute.

40. From the time Woodford County appointed and empowered Abney, through Kiki's killing and beheading, Woodford County never appointed a veterinarian to serve as deputy administrator.

41. Prior to Kiki's killing and beheading, Woodford County was aware Abney, while exercising his governmental powers as Woodford County's Animal Control Administrator, was acting in legally dubious manners and in ways contrary to being a good public servant.

42. Specifically, Woodford County was aware of incidents, which were videoed and reviewed by Woodford County and City of Eureka officials and were determined to be indicative of Abney overreaching his authority.

43. From the time he was appointed and through the killing and beheading of Kiki, Abney used a truck marked with an official logo for Woodford County Animal Control, distributed business cards stating he was a Woodford County government official, and was contacted through Woodford County's Treasurer's office, which also performed animal control functions on behalf of Woodford County and Abney.

44. Despite knowing Abney was acting in manners which raised questions whether he possessed the temperament for the quasi-law enforcement role Woodford County hired Abney to perform, Woodford County did nothing to address the issue.

45. In approximately January 2023, Kiki was rescued by Keim.

46. Keim adopted Kiki as a companion animal and cared for Kiki, including vetting Kiki on March 12, 2023.

47. At the March 12, 2023, appointment, Kiki's veterinarian made a medical decision to vaccinate Kiki appropriately for her age and condition and provide additional vaccinations at the next appointment, which was set for April 17, 2023.

48. Since being rescued, Kiki lived at the Razor Zone Salon in Eureka, where she provided emotional support for patrons during the day.

49. After she was adopted as a companion animal by Keim approximately six weeks prior to the killing and beheading, Kiki was never let outside to run at large.

50. Since being rescued, in the approximately six weeks prior to Kiki's decapitation on March 23, 2023, Kiki never exhibited any signs of rabies.

51. On March 23, 2023, Abney appeared at the Razor Zone regarding a bite complaint involving Kiki.

52. Prior to going to the Razor Zone, Abney spoke with a Woodford County Deputy Sheriff, Jay Schreffler ("Jay"), whose spouse, Shannon, owned the Razor Zone.

53. Abney told Jay Kiki "viciously attacked" a person and that Abney was going to the Razor Zone to take Kiki to be euthanized.

54. When Abney arrived at the Razor Zone, he was provided Kiki's vet paperwork showing Kiki's vaccinations completed on March 12 and the follow up scheduled for April 17, 2023.

55. Tragically, Kiki never made it to the April 17 appointment because of Abney's actions.

56. Abney told Shannon, Keim, and another Razor Zone employee, Hannah, that Kiki was "gone" while running his finger in front of his throat in a "cut throat" gesture-indicating Abney intended to kill Kiki.

57. Abney told Shannon, Keim, and Hannah he was taking Kiki to University of Illinois ("U of I") to be killed and tested because the alleged bite victim could die.

58. Abney claimed he had "run this by" Woodford County's State's Attorney, Greg Minger, and that he was following procedure.

59. Instead of taking Kiki to U of I, Abney took Kiki to Associated instead.

60.     Despite claiming Kiki "viciously" attacked someone and that Kiki needed to be immediately killed and beheaded, Abney drove Kiki to Associated in the cab of his truck, unrestrained and unkenneled.

61.     Abney arrived at Associated the same day and told Associated Kiki was a "stray" and told Associated to kill and behead Kiki.

62.     Associated required Abney to complete a "Euthanasia Authorization" form on March 23, 2023.

63.     The form corroborated that Abney told Associated Kiki was a stray as Kiki's name was listed as "Stray 2."

64.     Abney certified that he was Kiki's owner and that "to the best of (Abney's) knowledge, Stray 2 (Kiki) has not bitten any person or animal during the last 10 days and has not been exposed to rabies."

65.     Abney's certification was a lie.

66.     Associated knew Abney's certification was a lie.

67.     Associated completed an IDPH Animal Rabies Laboratory Submission Form by which Associated represented Kiki was owned by Woodford County Animal Control and that Kiki's head was being submitted because Kiki committed an "Unprovoked bite from pet, after approval from local health department."

68.     Associated's lab submission was a lie.

69.     Shortly after having Kiki killed and beheaded, Abney returned to the Razor Zone.

70.     Abney told Keim that he took Kiki "all the way to Champaign" and that Kiki hid under his truck seat the entire drive.

71. Abney then claimed he needed a check to cover an antibiotic cost for the alleged bite victim.

72. When asked whether the alleged victim would sign a release, Abney claimed "she won't sign, but this will be the last you hear from her."

73. On March 24, 2023, Keim, unsettled by the ordeal, called U of I and discovered Abney did not take Kiki there as he claimed.

74. Keim then called Woodford County for a copy of the bite report, which was not filed.

75. Abney returned to the Razor Zone and told Shannon he would not provide any documents without a FOIA, but admitted he took Kiki to Associated and that the testing was negative.

76. Keim then sent a text to Abney for the bite report, photographs from the alleged victim, and paperwork for her insurance claim-Abney never responded.

77. Keim called the Woodford County State's Attorney who told Keim there was no knowledge in the office of anything about a bite, or Kiki's killing.

78. Later in the day, on March 24, Keim went to State's Attorney's office and the Assistant State's Attorney for Woodford County told Keim that Abeny alleged Keim was "on board with this."

79. Abney's statement was false.

80. Keim called Associated and spoke to Mary Beth, then followed up in person at Associated.

81. Mary Beth confirmed that Abney told Associated Kiki was a stray and apologized, admitting, that if Associated knew Kiki was vetted and living in the Razor Zone as a companion animal, Kiki would not have been killed.

82. Kiki's killing and beheading was investigated by the Eureka Police Department.

83. Eureka Assistant Police Chief Kim Jones investigated, prepared a report, and forwarded the case to Woodford County's State's Attorney for further review of possible charges.

84. Woodford County's State's Attorney has not brought any charges and Abney is still appointed and empowered by Woodford County as its Animal Control Administrator, without any veterinarian appointed as a deputy.

### COUNT I-42 U.S.C. § 1983-ILLEGAL SEARCH
### (Abney and Woodford County)

85. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

86. At all times relevant, Abney was a government agent acting under the color of law.

87. At all times relevant, Abney was empowered by Woodford County to act as Woodford County's Animal Control Administrator.

88. The search of Keim's property performed willfully and wantonly under the color of law by Abney and Woodford County, as detailed above, was in violation of Keim's right to be free from unreasonable searches under the 4th Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

89. As a proximate result of the above-detailed actions of Abney and Woodford County, Keim was injured, including deprivation of her liberty and the taking of her property. In addition, the violations caused mental anguish and Keim to incur various expenses, including attorney fees, all to Keim's detriment and damage.

90. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

**COUNT II-42 U.S.C. § 1983-ILLEGAL SEIZURE AND DUE PROCESS VIOLATION**
**(Abney, Woodford County, and Associated)**

91. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

92. At all times relevant, Associated was acting on Abney's direction to kill and behead Kiki.

93. Associated, by taking Abney's direction, was performing the public function of Woodford County Animal Control-specifically, the destruction of animals which were strays.

94. Abney coerced and significantly encouraged Associated to kill and behead Kiki at Abney's behest by telling Associated Kiki was a stray and needed to be tested for rabies.

95. Associated and Abney were in a position of interdependence in killing and beheading Kiki such that Associated and Abney were joint participants in the enterprise as Abney was not a veterinarian and needed a veterinarian to kill and behead Kiki.

96. Instead of observing Kiki for 10 days as required by statute, Abney and Associated killed and beheaded Kiki within hours of Abney's first governmental action.

97. The summary destruction of Kiki occurred without due process, despite Abney knowing Kiki was a companion animal and not a stray.

98. The seizure of Keim's property performed willfully and wantonly under the color of law by Abney, Woodford County, and Associated, as detailed above, was in violation of Keim's right to be free from unreasonable seizures under the 4th Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

11

99. As a proximate result of the above-detailed actions of Abney, Woodford County, and Associated, Keim was injured, including deprivation of her liberty and the taking of her property. In addition, the violations caused mental anguish and Keim to incur various expenses, including attorney fees, all to Keim's detriment and damage.

100. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

### COUNT III-42 U.S.C. § 1983-*MONELL* LIABILITY
### (Krug and Woodford County)

101. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

102. At all times relevant, Woodford County maintained a contract with Abney to act as Woodford County's Animal Control Administrator.

103. Prior to executing the contract, neither Krug, nor Woodford County, performed any diligence in determining whether Abney was qualified for the position.

104. Krug and Woodford County knew at the time of appointing and empowering Abney as Woodford County's Animal Control Administrator that Abney was not a veterinarian.

105. However, despite the statutory obligation to do so, neither Krug, nor Woodford County, authorized or appointed a deputy administrator who was a veterinarian.

106. Abney never appointed a deputy administrator who was a veterinarian.

107. Krug and Woodford County were advised in December 2021 that their policy and custom of refusing to appoint a veterinarian as the Administrator, or deputy administrator, was in violation of statute.

108. Neither Krug, nor Woodford County took any action to remedy the legal deficiency.

109. Since appointing and empowering Abney, it was Krug and Woodford County's policy, custom, and practice to not have a veterinarian appointed as the administrator or deputy administrator.

110. Additionally, after appointing and empowering Abney, Woodford County did not provide Abney any training regarding Abney performing government functions which could and have implicated Constitutionally protected rights.

111. Unlike its police force, which receives 4th Amendment and other training regarding citizens' protected rights, Woodford County failed to train Abney.

112. Woodford County also failed to supervise and discipline Abney for prior issues which had become known to Woodford County before Kiki was killed and beheaded.

113. Currently, Woodford County has still failed to supervise and discipline Abney for his role in Kiki's killing and beheading.

114. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

**COUNT IV-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (STATE CLAIM)**
**(Abney and Woodford County)**

115. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

116. Abney, acting as Woodford County's Animal Control Administrator, engaged in extreme and outrageous conduct, as herein described.

117. Abney recklessly or consciously disregarded the probability of causing emotional distress through his conduct.

118. Keim, as well as others involved in Kiki's life, have suffered severe emotional distress due to Abney's conduct.

119. Keim has sought medical treatment and medications as a result of Abney's conduct.

120. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

### COUNT V-TRESPASS TO CHATTEL (STATE CLAIM)
### (Abney and Woodford County)

121. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

122. Abney and Woodford County's exercise of authority over Kiki, by killing and beheading Kiki, rather than having Kiki observed for the statutory 10-day period was unlawful.

123. Abney and Woodford County's falsification of Associated's consent form for the purpose of getting Associated to destroy Kiki was unlawful.

124. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

### COUNT VI-*RESPONDEAT SUPERIOR* (STATE CLAIM)
### (Woodford County)

125. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

126. Abney's actions were performed in the course of his duties as Woodford County's Animal Control Administrator, pursuant to being appointed and empowered by Krug and Woodford County.

127. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

### COUNT VII-745 ILCS 10/9-102 INDEMNIFICATION (STATE CLAIM)
### (Woodford County)

128. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

129. At all times relevant, Abney was acting as Woodford County's Animal Control Administrator, under the color of law, empowered with Woodford County's authority, in furtherance of his obligations as a government official of Woodford County.

130. At all times relevant, Abney represented himself to others as a Woodford County government official and, from time to time, would participate with the Woodford County Board and its Public Safety Committee, as required by Board members.

131. At all times relevant, Abney believed Woodford County to be his "boss."

132. At all times relevant, Abney's work was controlled by Woodford County through direction and ordinance.

133. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

### COUNT VIII-NEGLIGENCE (STATE CLAIM)
### (Associated)

134. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

135. Associated knew or should have known Abney was not a veterinarian.

136. Associated knew or should have known that, in cases of animal bites, a 10-day observation period is mandated by statute.

137. Associated's own euthanasia consent form required Abney to certify that there was no known bite within 10-days of the euthanasia due to the statutory requirement.

138. Associated knew or should have known that Abney's certification on the consent was a lie as Associated indicated on the IDPH form that the rabies test was being conducted due to a "bite from pet."

139. Associated, as the only veterinarian involved, had a duty to ensure Kiki's killing and beheading was lawful.

140. Associated breached its duty and proximately caused Keim's damages.

141. Keim prays for judgment against these Defendants in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any other relief the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY**

    Respectfully submitted,
    SARAH KEIM, Plaintiff


By:   */s/ Jason W. Jording*
      Jason W. Jording

Jason W. Jording—ARDC# 6309358
JAMES KELLY LAW FIRM, PC
7817 N. Knoxville Avenue
Peoria, IL 61614
T: (309) 679-0900
F: (309) 679-0919
jasonj@jameskellylawfirm.com
*Attorney for Plaintiff*