# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

SARAH KEIM,                                )
                                           )
    Plaintiff,                         )
                                           )
        v.                         )    Case No. 1:23-cv-1156
                                           )
TIM ABNEY, WOODFORD COUNTY,                )
JUSTIN PETERSON, LISA KIRBY, AND           )
PETERSON VET, INC.,                        )
                                           )
    Defendants.                        )

## ORDER & OPINION

This matter is before the Court on motion by Defendants Justin Peterson ("Dr. Peterson"), Lisa Kirby ("Dr. Kirby"), and Peterson Vet, Inc. ("Associated") to dismiss Counts II, VII, and VIII of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 24). Defendants provided a Memorandum of Law in Support of their Motion to Dismiss. (Doc. 25). Plaintiff responded (doc. 28), making this matter ripe for review. For the following reasons, Defendants' Motion is granted.

### BACKGROUND

On November 7, 2023, Plaintiff Sarah Keim ("Plaintiff") filed an Amended Complaint alleging federal claims pursuant to 42 U.S.C. § 1983 and state-law claims related to the euthanasia of her kitten, Kiki. (Doc. 21). After Plaintiff "adopted Kiki as a companion animal" in January 2023, she kept Kiki at her place of employment, the Razor Zone Salon in Eureka, Illinois. (Doc. 21 at 5–6).

On March 23, 2023, Tim Abney ("Abney") appeared at the Razor Zone Salon in his capacity as the Woodford County Animal Control Administrator in response to an alleged biting incident. (Doc. 21 at 6). Plaintiff provided Abney documentation regarding Kiki's veterinary care. (Doc. 21 at 6). Abney advised Plaintiff and others present that he would take Kiki to the University of Illinois for rabies testing, was "following procedure," and informed relevant authorities about the biting incident. (Doc. 21 at 7). Instead, however, Abney transported Kiki to Associated, a veterinary clinic in nearby Washington, Illinois. (Doc. 21 at 7). Upon his arrival at Associated, Abney allegedly completed a "Euthanasia Authorization" form identifying Kiki as a stray animal and certifying that the kitten "has not bitten any person or animal . . . ." (Doc. 21 at 7). As alleged, Abney's misrepresentation on Associated's form provided him with the opportunity to bypass the ten-day observation period required by Illinois statute before testing an animal for rabies after a biting incident. 510 ILCS § 5/13(a). The statute allows the Administrator, or Deputy Administrator, to reduce the ten-day period if he or she is a licensed veterinarian. *Id*. Abney is not a licensed veterinarian; thus, to immediately euthanize Kiki, he allegedly misrepresented Kiki as a stray animal who had not bitten any person or animal. (Doc. 21 at 7–8).

At Associated, an Illinois Department of Public Heath Animal Rabies Laboratory Submission Form ("IDPH form") was also completed, indicating the reason for the rabies laboratory submission was an "[u]nprovoked bite from pet, after approval from local health department." (Doc. 21 at 8). Kiki was then euthanized at Associated. (Doc. 21 at 8). Plaintiff alleges that either Dr. Peterson or Dr. Kirby, both

licensed veterinarians working at Associated, performed the euthanasia procedure. (Doc. 21 at 8).

Plaintiff, "unsettled by the ordeal," called the University of Illinois, which informed her that Kiki was never brought in by Abney. (Doc. 21 at 8). Her next call was to Woodford County officials, who similarly informed her there was no information on Kiki or an alleged biting incident. (Doc. 21 at 8). When Abney returned to the salon, he informed Plaintiff that he actually took Kiki to Associated. (Doc. 21 at 9). An Associated employee then told Plaintiff that if they had known Kiki was a pet, she would not have been euthanized. (Doc. 21 at 9).

Plaintiff filed an Amended Complaint against Woodford County, Associated Veterinary Clinic, Dr. Peterson, Dr. Kirby, and Animal Control Administrator Tim Abney.[1] (Doc. 21). Count I alleges a violation of Plaintiff's Fourth Amendment rights as incorporated by the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 against Abney. (Doc. 21 at 11–13). Count II uses 42 U.S.C. § 1983 to allege a violation of Plaintiff's Fourth Amendment rights against Drs. Peterson and Kirby. (Doc. 21 at 13–16). Count III alleges "*Monell* liability" through 42 U.S.C. § 1983 against Woodford County. (Doc. 21 at 16–18). Count IV is a state-law claim of intentional infliction of emotional distress against Woodford County and Abney. (Doc. 21 at 19). Count V is a state-law claim of trespass to chattel against Woodford County and Abney. (Doc. 21 at 19). Count VI is a state-law claim of indemnification against Woodford County.

---

[1] Plaintiff's Amended Complaint refers to two claims as "Count II" and does not include a Count III. (*See* Doc. 21 at 13–18). For purposes of this Order, the Court has labeled the second "Count II" claim as Count III.

3

(Doc. 21 at 20). Count VII is a state-law claim of negligence against Drs. Peterson and Kirby. (Doc. 21 at 20–21). Count VIII is a state-law claim of *respondeat superior* against Associated. (Doc. 21 at 21). Defendants Abney and Woodford County answered Plaintiff's Amended Complaint. (Docs. 30, 31). Defendants Associated, Dr. Peterson, and Dr. Kirby move to dismiss the claims against them. (Doc. 24).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "a short and plain statement" of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Rule 8(a)'s notice pleading standard applies to pendant state law claims that are pleaded in federal court." *Christensen v. Cnty. of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007).

When considering a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true and drawing "all reasonable inferences from those facts in favor of the plaintiff." *U.S. ex rel. Berkowitz v. Automation Aids, Inc.,* 896 F.3d 834, 839 (7th Cir. 2018). Those statements which are legal conclusions rather than factual allegations

are not taken as true but are disregarded at this stage. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

DISCUSSION

As stated, the Amended Complaint contains eight counts alleged against the various Defendants. The instant Motion concerns only Counts II, VII, and VIII. The Court is authorized to address Plaintiff's Section 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). There is supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related state-law claims. Defendants' arguments will be addressed in turn.

## I. Count II

Count II is brought pursuant to 42 U.S.C. § 1983, alleging Drs. Peterson and Kirby (collectively "Defendant Veterinarians") violated Plaintiff's constitutional right to be free from unreasonable seizures under the Fourth Amendment. (Doc. 21 at 13–16). Defendant Veterinarians make several arguments that Plaintiff's Count II should be dismissed, including that Plaintiff largely repeated the mistake that caused her first complaint to be dismissed—pleading a constitutional violation under only the Fourth Amendment. (Doc. 25 at 1–2).

In her Response, Plaintiff states "[t]here is simply no question that Keim's Complaint suing Kirby and Peterson under 42 U.S.C. § 1983 for violating her Fourth Amendment rights, as incorporated by the Fourteenth Amendment, is proper and a claim is stated in Count II." (Doc. 28 at 5). However, that statement is false. Plaintiff does not plead her claim under the Fourteenth Amendment within Count II despite the direct instruction to do so. (Doc. 21 at 13–16). On October 25, 2023, this Court *sua*

5

*sponte* dismissed Plaintiff's Complaint for failure to adequately plead the elements necessary to bring an action pursuant to Section 1983. (*See* doc. 20). In amending her pleading, Plaintiff was instructed to cure the deficiencies in the federal claims, including her failure to properly allege violations under the Fourth *and* Fourteenth Amendments.[2] (Doc. 20 at 4–5). Only a violation of her Fourth Amendment rights is pled. (Doc. 21 at 13–16). For this reason, Count II is dismissed.

Even if the claim was properly amended, it would fail for other reasons, which guides this Court to dismiss Count II with prejudice. Plaintiff alleges that Drs. Peterson and Kirby are state actors who may be sued under Section 1983 for their purported role in testing Kiki for rabies. (Doc. 21 at 14–16). In moving to dismiss, Defendant Veterinarians argue that they are private individuals and were not acting under the color of state law. (Doc. 25 at 4–8).

Section 1983 authorizes a claim against a person, acting under color of state law, who deprived the plaintiff of a right, privilege, or immunity under the

---

[2] A wide variety of constitutional rights are enforced by using Section 1983. The Fourteenth Amendment's Due Process Clause incorporates the Bill of Rights and applies those constitutional rights to the states. *See McDonald v. City of Chicago*, 561 U.S. 742, 763 (2010). This includes the Fourth Amendment's protections against unreasonable searches and seizures. Additionally, this Court pointed Plaintiff to consider that her claim is factually like a procedural due process claim under the Fourteenth Amendment. While she doubles down on the contention that her Count II is most similar to Section 1983 claims under the Fourth Amendment, this Court is not convinced. Cases like hers, where an animal is allegedly seized by a government official and later euthanized, generally allege a procedural due process violation against the "euthanizer." Plaintiff's claim against Defendant Veterinarians is derived from the Fourteenth Amendment's Due Process Clause, as she is alleging either Dr. Peterson or Dr. Kirby unconstitutionally deprived her of her property interest in Kiki after the purportedly unlawful seizure by Defendant Abney. *See e.g., Madero v. Luffey*, 439 F. Supp. 3d 493, 513 (W.D. Pa. 2020).

Constitution or federal law. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009) (citing *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). When this type of claim is leveled against private individuals, as it is here, there are two criteria that must be met:

> First, the alleged deprivation of federal rights must have been caused by the exercise of a right or privilege created by the state, a rule of conduct imposed by the state, or someone for whom the state is responsible . . . . Second, the private party must be a person who may fairly be said to be a state actor.

*London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010) (citations omitted). The first prong is met because Plaintiff alleged the deprivation was caused by Defendant Abney, a local government official. The second compels an analysis of whether Defendant Veterinarians acted under color of state law. This requirement is critical, as it "sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Rodriguez,* 577 F.3d at 822–23.

There are various tests to evaluate the "range of circumstances" that constitute state action. *See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001). The Seventh Circuit[3] has outlined them as (1) the "symbiotic relationship

---

[3] Recently, the Supreme Court described these tests, but did not refer to the symbiotic relationship test, writing "[a] private entity can qualify as a state actor in a few limited circumstances – including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Comm. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (citations omitted). This list was not intended to be exhaustive, and Plaintiff's arguments extend to each test described in *Rodriguez*; thus, the Court will not limit its consideration of the four tests.

test"; (2) the "state command and encouragement test"; (3) the "joint participation doctrine"; and (4) the "public function test." *Rodriguez*, 577 F.3d at 823–24. In response to Defendants' Motion, Plaintiff argues that Drs. Peterson and Kirby are liable for the alleged constitutional harm as state actors under all four doctrines. (*See* doc. 21 at 6–10). However, after viewing the well-pleaded allegations as true and drawing all reasonable inferences in favor of Plaintiff, the Court finds that only a version of the joint participation test applies to the alleged circumstances.[4]

---

[4] To explain how each test fruitfully applies to Defendant Veterinarians, Plaintiff largely makes the same argument, which boils down to "Defendant Abney could not euthanize Kiki, so the actions of Kirby and Peterson are subject to the same liability as the state by virtue of completing the task for him." This contention fits only under the joint participation test. As a reminder, Plaintiff has sued private *individuals*, not a private *entity*. The symbiotic relationship test stems from *Burton v. Wilmington Parking*, 365 U.S. 715 (1961), a case where a privately owned restaurant was considered a state actor. Because the restaurant leased part of a building from the state, the state maintained the building, the state provided parking for restaurant guests, and the state depended on the restaurant's financial success, the restaurant could be considered a state actor for purposes of racial discrimination. *Id.* The holding was limited to instances in which a state leased public property "in the manner and for the purpose shown to have been the case here." *Id.* at 726. No alleged facts could support even a shadow of an argument under this test.

The state command and encouragement test also does not apply here, because Plaintiff has only alleged that Abney's unlawful actions and misrepresentations influenced Defendant Veterinarians. This test is only met if the action is coerced through the actions like a legislative enactment or a custom propagated by government enforcement actions. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 546 (1987) ("State action exists if the government has exercised coercive power or has provided . . . significant encouragement, either overt or covert, in effecting the challenged action."). Plaintiff then argues that the public function test applies because Peterson and Kirby assumed the role of Woodford County's Animal Control. The public function test examines whether the state has delegated to the private entity a function which is "exclusively reserved" to the state. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005). While animal control is considered a power exclusively reserved to the state,

Within the Seventh Circuit, "a private citizen can act under color of law if there is evidence of a concerted effort between a state actor and that individual." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019); *see also L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). This is known as the "conspiracy theory" of Section 1983 liability, and the plaintiff must allege that "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Spiegel*, 916 F.3d at 616. In other words, Plaintiff must allege that the state and private actors "had an agreement in relations to a shared unconstitutional goal." *T.S. v. Twentieth Century Fox Television*, 2017 WL 4620841, at *2 (N.D. Ill. Oct. 16, 2017) (citation omitted); *see also Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206 (7th Cir. 1980) ("It is not sufficient to allege that the (private and state) defendants merely acted in concert or with a common goal. There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding."). Such factual allegations must support "a meeting of the minds . . . with a state actor to deny plaintiffs a constitutional right." *Wilson v. Warren Cnty Ill.*, 830 F.3d 464, 468 (7th Cir. 2016) (internal quotation marks and citations omitted).

---

*Fabrikant v. French*, 691 F.3d 193, 208 (2d Cir. 2012), the alleged facts, which show no delegation of authority beyond Abney's request, do not come close to meeting this test, even if the claim was alleged against a private entity. *See id*. at 211 (concluding that animal rescue organizations are "state actors for purposes of § 1983 when they perform surgery on animals in their care . . . following searches and seizures carried out by the [organizations] pursuant to warrants").

In the Amended Complaint, Plaintiff contends that Drs. Peterson and Kirby "were the only veterinarians; therefore, the only way Kiki could be killed was by Abney and either Peterson or Kirby, or both, to act jointly" and "[i]t is enough that the private party is a willful participant in joint activity with the State or its agent." (Doc. 21 at 15). According to Plaintiff, "Kirby and Peterson agreed to provide specific medial services for compensation, did so freely and for consideration; therefore, assuming the same liability as the state." (Doc. 28 at 9). During this interaction, Plaintiff alleges that Abney informed Associated that Kiki was a stray animal and completed requisite paperwork for rabies testing, labeling the kitten as "Stray 2" and certifying that he was the owner. (Doc. 21 at 7). After completing the intake, Plaintiff alleges one of or both Defendant Veterinarians performed the rabies testing and euthanasia. (Doc. 21 at 8). A form related to the rabies testing was sent to the Illinois Department of Public Health, which indicated that the testing was completed due to an "[u]nprovoked bite from pet, after approval from local health department." (Doc. 21 at 8).

These alleged facts support that Defendant Veterinarians were duped into completing a task for Abney after he arrived at their place of work. This transaction, without more, is not enough to demonstrate that the private individuals acted under the color of state law. This Court cannot say that Dr. Peterson or Dr. Kirby "directed themselves toward an unconstitutional action by virtue of mutual understanding" with Abney. *Tarkowski*, 644 F.2d at 1206. The alleged facts, when viewed in the light most favorable to Plaintiff, demonstrate that Defendant Veterinarians were

fortuitously inveigled by Abney to immediately test and euthanize Kiki and bypass the statutory waiting period. The Court notes the allegation that the IDPH form completed at Associated contained untrue information, which was unknown to Defendant Veterinarians and indicated Kiki was a pet who had bitten someone. Drs. Peterson and Kirby's ignorance of the falsehood coupled with the fortuitousness of their involvement with Defendant Abney is patently insufficient to show their participation in a conspiracy to deprive Plaintiff of her constitutional rights in Kiki. A "mere suspicion" that third parties fortuitously became involved with a person adverse to Plaintiff cannot, without some showing of complicity, make a plausible conspiracy. *See Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

For example, in recent case *Costa v. Ramaiah*, the court granted a motion to dismiss after the plaintiff failed to plausibly allege that hospital staff who perform "administrative and investigatory functions on behalf of certain state agencies . . . in cases of suspected child abuse or neglect" were state actors. No. 21-cv-5165, 2023 WL 5581261, at *20 (N.D. Ill. Aug. 29, 2023). There, the complaint only supported that the state and hospital staff "worked together" and was not enough to demonstrate that the staff had an agreement with the state to deprive the plaintiff of a constitutional right. *Id*. at *21. The court wrote that "a relationship between a government and a private institution, without more, is not enough to convert the private actor into a state actor." *Id*. In another relevant case, a court decided whether the defendants conspired with state actors when it reached an agreement to film a television show in a juvenile detention center. *T.S. v. Twentieth Century Fox*

11

*Television*, No. 16 C 8303, 2017 WL 4620841, at *3 (N.D. Ill. Oct. 16, 2017). The plaintiff detainees alleged the defendants offered to pay the wages of the detention center workers "on the condition that the [center's] administrators would change the facility's normal operations to make the second and third floors available to television crew[,]" and "knew or were substantially certain that filming [the show] at the [center] would result in the lockdowns and attendant restrictions on the children housed there." *Id*. However, the court concluded that the plaintiff failed to show the defendants had a common, unconstitutional goal with the state actors. *Id*. The court wrote

> Plaintiffs' allegations suggest that the Fox Defendants were aware that their desire to film *Empire* at the [center] conflicted with the juvenile detainees' needs. At best, Plaintiffs have alleged that the Fox Defendants sought to enter into an agreement that would induce the administrators to exclude children from the [center]'s second and third floors and that all of the Defendants knew that filming *Empire* would result in restrictions on the children. Although the result of this alleged agreement may have deprived Plaintiffs of their constitutional rights, Plaintiffs' allegations do not support the inference that the state and private actors shared an unconstitutional goal in the first instance.

*Id*. at *4. There are even fewer supporting allegations here than in *Costa* and *T.S.*, and the few only demonstrate that a one-time transaction occurred, and that it was possible Defendant Veterinarians knew Kiki was a pet. As in *T.S.*, awareness of an unconstitutional result does not satisfy the standards of alleging a conspiracy, and as in *Costa*, neither does an agreement for services. For those reasons, this Court concludes that Plaintiff has not plausibly alleged that Defendant Veterinarians reached an agreement with any state actor to deny Plaintiff her constitutional rights, or that Defendants and a state actor shared a common, unconstitutional goal.

12

As the factual allegations are insufficient to support that either Dr. Peterson or Dr. Kirby acted under the color of state law, Plaintiff cannot allege a Section 1983 claim against Defendant Veterinarians. This Court believes that any amendment would be futile and dismisses Count II with prejudice.

## II.   Count VII

Count VII is a claim of negligence brought under state law against Drs. Peterson and Kirby. (Doc. 21 at 20–21). Specifically, in the Amended Complaint, Plaintiff alleges Defendant Veterinarians breached their duty to (1) "determine, independent of Abney's statements, whether Kiki should be killed in accordance with their veterinary responsibilities"; (2) "ensure Kiki's killing and beheading was lawful"; and (3) "ensure all guidance was followed, including contacting the appropriate health department and evaluating whether Kiki needed to be killed and beheaded." (Doc. 21 at 21).

Drs. Peterson and Kirby argue that as a matter of law they cannot be liable for negligence because there is no duty owed to Plaintiff under the alleged facts. They point to several allegations that support that Defendant Veterinarians relied on a government official's representation and that, as represented, the procedure was authorized by Illinois law and relevant guidance. (Doc. 25 at 15–16). To find them negligent, Plaintiff's theory of liability "would necessarily be premised on a veterinarian's supposed duty to conduct an independent investigation into the ownership of an animal, factual assertions related to reported animal attacks . . . as

well as authority of local government officials to request rabies testing, prior to performing a requested procedure." (Doc. 24 at 6).[5]

In Plaintiff's Response, she contends that "Defendants only raise whether their purported reliance upon Abney as a government official would insulate them from negligence and that lawful conduct cannot be negligent." (Doc. 28 at 12). In an untasteful manner, Plaintiff likens Defendants' arguments to "a present-day Nuremburg defense." (Doc. 28 at 13). She then informs the Court that a jury would be entitled to find Defendant Veterinarians negligent for euthanizing Kiki if they knew that she was a pet and had not bitten a person, regardless of the misrepresentations made by Abney. (Doc. 28 at 13–14). However, that scenario is not pled nor is it a reasonable inference from the factual allegations pled. The response to Defendants' arguments ignores that whether a duty exists is a question of law for the Court to decide, and that in the "absence of allegations that would show the existence of a duty, no recovery by the plaintiff is possible." *MacDonald v. Hinton*, 361 Ill. App. 3d 378, 382 (1st Dist. 2005) (citations omitted); *see also Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 18.

The "cause of action is typically framed in terms of general negligence" for a pet's wrongful death. *Anzalone v. Kragness*, 356 Ill. App. 3d 365, 370 (1st Dist. 2005) (citations omitted). Thus, a complaint "must allege facts that establish the existence

---

[5] The content of the IDPH form that rabies testing was performed due to "an unprovoked bite from pet" raises a troubling issue—whether this allegation sufficient to allow this claim to proceed to discovery to allow development of the record to understand the circumstances underlying the completion of the IDPH form and its significance to Defendant Veterinarians' knowledge.

of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 430 (2006). Under Illinois law, "the touchstone of [the] duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Simpkins,* 2012 IL 110662 at ¶ 18. Generally, veterinarians owe a duty of care to use such reasonable skill, diligence, and attention as might ordinarily have been expected of careful, skillful, and trustworthy persons in the profession. *Loman v. Freeman*, 229 Ill. 2d 104, 119 (2008) (relying on 299A of the Restatement (Second) of Torts and citing C. Bailey, Annotation, *Veterinarian's Liability for Malpractice*, 71 A.L.R.4th 811, § 2(a), 1989 WL 571915 (1989)).

The Court declines to impose a duty on Defendant Veterinarians requiring them to independently investigate claims made by a government official under these circumstances. Plaintiff does not allege that any type of relationship existed between herself and Defendant Veterinarians—there is no connection that supports a finding that the harm could have been foreseeable. It is not alleged that either Dr. Peterson or Dr. Kirby knew of Plaintiff, had previously treated Kiki, or had any other knowledge of Plaintiff's ownership of Kiki. But it is alleged that Abney made several misrepresentations to dupe Defendant Veterinarians into euthanizing Kiki, molding his story to make them believe the procedure was lawful. *See MacDonald,* 361 Ill. App. 3d at 382 ("Ordinarily, a party owes no duty of care to protect another from the harmful or criminal acts of third persons."). Plaintiff herself stated that an Associated

15

employee told Plaintiff that "if [they] knew Kiki was vetted and . . . a companion animal," she would not have been euthanized. (Doc. 21 at 9). Considering these factual allegations, it is not reasonable to infer that the mistake on the IDPH form indicates Abney told inconsistent stories to Defendant Veterinarians that put them on notice and required further action. The Court cannot plausibly infer that Drs. Peterson and Kirby owed Plaintiff (who was unknown to them) a duty of care to protect against the harmful actions of a third party, or to independently investigate the statements of a local government official. Thus, Defendants' Motion is granted as to Count VII, and this claim against Drs. Peterson and Kirby is dismissed without prejudice.

## III.  Count VIII

Plaintiff brings a claim of vicarious liability against Associated for the alleged negligence of its employees. (Doc. 21 at 21–22). Plaintiff admits that if her negligence claim against Associated's employees is dismissed, then this claim against Associated is subject to dismissal, as well. (Doc. 28 at 14). Her vicarious liability claim is dismissed without prejudice. Defendants' Motion is granted as to Count VIII.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (doc. 24) is GRANTED. Count II of Plaintiff's Amended Complaint (doc. 21) is DISMISSED WITH PREJUDICE. Counts VII and VIII are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Entered this 23rd day of May 2024.

16

s/ Joe B. McDade

JOE BILLY McDADE
United States Senior District Judge